UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LARRY W. GARNER,** | ) | Case No. 5:07CV03506 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **MARCIA F. LAMBERT,** | ) | |
| | ) | |
| Respondent. | ) | |

This case involves a judicial review of the revocation by respondent Marcia F. Lambert ("Lambert" or "Respondent"), of the federal firearms license ("FFL") previously issued to petitioner Larry W. Garner ("Garner" or "Petitioner"). Lambert is the Director of Industry Operations ("DIO"), Columbus Field Division, for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), which is the regulatory agency responsible for enforcing federal firearms laws. Pending before the Court is Respondent's motion for summary judgment seeking to uphold the administrative revocation of Garner's FFL. (Doc. No. 17.)

**I. Statement of Facts and Procedural History**

Garner is an auctioneer who deals in firearms. (Compl. ¶ 4.)[1] His place of business is located in Carrollton, Ohio. (Compl. ¶ 3.) As a firearms dealer, Garner holds a federal

---

[1] All references to the Complaint, unless otherwise noted, are to the First Amended Complaint filed December 2, 2007. (Doc. No. 3.)

firearms dealer's license and is therefore subject to the requirements of the Gun Control Act of 1968 (the "GCA"), codified as amended at 18 U.S.C. §§ 921-930. (Compl. ¶ 6.) Lambert, in her duties as DIO of the Columbus office of ATF, oversees the enforcement of the GCA as it applies to licensed firearms dealers, including Garner.

Garner's FFL originally was issued in 1982. (Gov't Ex. 1.) In April 1995, ATF conducted a compliance inspection of Garner's premises. Following the inspection, a Report of Violations ("ROV") was issued to Garner. (Gov't Ex. 10.) The ROV cited Garner for three violations. The three cited violations were as follows: (1) failure properly to complete Form 4473 prior to disposition of a firearm in eight instances; (2) failure properly to complete Form 5300.35, Statement of Intent to Obtain a Handgun, items 8 and 9; and (3) failure to ensure that the purchaser properly completed Form 5300.35.[2] (*Id*.) The ROV included instructions for corrective action relative to each of the cited violations. (*Id*.)

A compliance inspection was conducted in November 1996. No violations were found during this inspection.

In May 2002, another inspection was performed. As a result of this inspection, another ROV was issued to Garner. (Gov't Ex. 11.) This ROV cited Garner for seven violations of the GCA. The violations reported in the May 2002 ROV included: (1) failure to update the A&D record timely with regard to 150 firearms found in inventory and with respect to certain firearms that did not sell at auction and were retained for later sale; (2) failure timely to complete acquisition entries for disposed-of firearms; (3) failure properly to complete Form 4473 due to failure to list the actual transferor; (4) failure to maintain required records at the licensed premises; (5) improperly removing the instruction sheets from Form 4473; (6) failure to

---

[2] Form 5300.35 no longer is required.

complete Form 3310.4 for the sale of multiple handguns, as required; and (7) failure to obtain a variance to maintain a computerized recordkeeping system. (*Id.*) At the conclusion of this inspection, the ATF investigator reviewed the pertinent GCA regulations with Garner, and Garner signed a statement acknowledging that such information was explained to him. (Gov't Ex. 13.) In addition, a warning letter was issued to Garner at this time, informing him that any future violations could be considered willful and therefore could result in revocation of his FFL. (Gov't Ex. 12.)

The next compliance inspection, which took place in April 2004, revealed several violations and led to the issuance of another ROV.[3] (Gov't Ex. 14.) The violations were as follows: (1) Garner failed to note in the A&D book that an out-of-state recipient of three firearms was an FFL, and that, contrary to what was reported in the A&D book, two of the three firearms, in fact, never were transferred to the individual; (2) failure to conduct the required NICS check on a purchaser before transferring a firearm; (3) failure to execute a Form 4473 prior to the transfer of a firearm; (4) failure properly to file a Form 4473;[4] (5) failure accurately to execute Form 4473 regarding 213 of the 436 such forms examined; (6) failure timely to enter 1,853 firearms (all acquired from the Krauss estate) into the A&D book, and failure to create a separate

---

[3] The ROV arising out of the April 2004 inspection exists in three versions. Only the third version was reviewed by the hearing officer during the administrative hearing. The first version was given to Garner and was signed by him and the ATF inspector at the conclusion of the inspection. The second version reflected a change to one of the cited violations. Specifically, the original version of the ROV cited Garner for failing timely to enter fifteen firearms into the A&D book. These firearms related to an acquisition of firearms from an estate. One of the ATF inspectors further investigated this estate acquisition, and subsequently amended the ROV to reflect the failure by Garner timely to enter a total of 1,853 firearms into the A&D book, all of which came from the same estate. The parties continue to argue about the circumstances surrounding the acquisition of the estate firearms, as well as its effect. The third and final version of the ROV made a change to the first violation, described infra. It is not clear how this violation changed from the first to the third version.

[4] This violation was disputed by Garner at the administrative hearing, and the hearing officer did not reach a conclusion as to whether its citation was proper. It will not be considered as a potential basis for revocation of the FFL.

acquisition line for each firearm.[5] (*Id*.) Following the inspection, ATF investigators again reviewed the GCA regulatory requirements with Garner, and Garner again signed an acknowledgment of the review. (Gov't Ex. 16.) Due to the violations uncovered in this inspection, and Garner's non-compliance history, a warning conference was held at the ATF office in Middleburg Heights, Ohio. (Gov't Ex. 15.) According to Respondent, the purpose of such a conference is to impress upon the licensee the seriousness of the violations and the necessity that they fully comply with the laws and regulations pertaining to FFLs. (Gov't Ex. 32, 29.) Garner and the ATF Area Supervisor were present at this conference, and the violations from the April 2004 ROV were reviewed with Garner. (*Id*. at 28.) Garner expressed his disagreement with the position taken by the ATF regarding the firearms from the Krauss estate. (Gov't Ex. 15, 5-6.) A follow-up letter dated March 11, 2005, memorializing the warning conference was sent to Garner. (Gov't Ex. 15, 7-8.)

The most recent inspection took place in April 2006. As a result of this inspection, another ROV was issued, dated May 4, 2006, which detailed eleven GCA violations. (Gov't Ex. 17.) The eleven violations uncovered during this inspection, when viewed by ATF in light of Garner's historical non-compliance, led directly to the issuance by ATF of a Notice of Revocation of Garner's license. The Notice of Revocation, issued January 27, 2007, was based upon six alleged willful violations of the GCA.[6] (Gov't Ex. 2.)

In accordance with statutory procedure, Garner requested and received an administrative hearing regarding the revocation of his license, which was held on June 26, 2007. (Compl. ¶¶ 7-8.) The hearing officer concluded, based upon the evidence presented at the

---

[5] *See supra*, n. 3.
[6] Only six of the eleven violations cited in the May 4, 2006, ROV were incorporated into the Notice of Revocation, issued January 27, 2007.

4

hearing, that Garner had committed the six GCA violations as alleged, and recommended revocation of Garner's license. (Gov't Ex. 29, 13-17.) Accordingly, on or about September 24, 2007, Garner received from Lambert a Final Notice of Denial of Application or Revocation of Firearms License. (Gov't Ex. 30.) This Final Notice informed Garner of Lambert's decision to uphold the revocation of Garner's license, and set forth the six statutory and regulatory violations justifying the decision. The Final Notice also notified Garner he was required to cease operations immediately. (Compl. ¶ 9.)

On November 9, 2007, pursuant to 18 U.S.C. § 923(f)(3), Garner commenced this action by filing a petition for judicial review of the revocation of his FFL. (Doc. No. 1.) Following Garner's filing of an amended petition, (Doc. No. 3), on February 13, 2008, Lambert filed a motion for summary judgment, asserting that the undisputed facts establish sufficient grounds to uphold the revocation. On April 14, 2008, Garner filed opposition to Lambert's motion (Doc. No. 22), and on April 28, 2008, Lambert replied. (Doc. No. 23.) The matter has been briefed fully and is ripe for decision.

**II. Law and Analysis**

    **A. Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law [. . .]." Fed. R. Civ. P. 56(c). The moving party bears the initial burden "to show that the nonmoving party has failed to establish an essential element of his case upon which he would bear the ultimate burden at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). The movant is not, however,

required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In deciding a motion for summary judgment, the Court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not, however, required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993). Rather, the burden falls upon the plaintiff at this stage of the litigation to designate specific facts or evidence in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).

### B. GCA Review

By statute, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter [. . .]." 18 U.S.C. § 923(e). After being informed of the decision to revoke his FFL, Garner timely sought administrative review. The revocation decision was upheld at the

administrative level, and Garner timely sought judicial review with this Court. The Court's review is de novo. 18 U.S.C. § 923(f)(3). In this proceeding, the Court is authorized to consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the administrative hearing. *Id*.

Respondent's decision to revoke Garner's license will be upheld if it is determined that Garner willfully violated any applicable provision of the GCA, or any regulation promulgated thereunder. 18 U.S.C. § 923(e); *Appalachian Resources Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004). Any single willful violation of the GCA or its implementing regulations can be a basis for revoking an existing license. *Appalachian Resources*, 387 F.3d at 464 (citations omitted); *Procaccio v. Lambert*, 233 F. App'x 554, 559 (6th Cir. 2007). According to Lambert, the definition of willful, as it applies to this action, is well-settled. "The majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis the dealer 'willfully' violated the GCA." *Id*. (citations omitted).

Garner contends, however, that the willfulness standard established by the Sixth Circuit in *Appalachian Resources* was superseded by the Supreme Court's decision in *Safeco Ins. Co. of Am. v. Burr*, 127 S.Ct. 2201 (2007). In *Safeco*, the Supreme Court addressed the willfulness standard applicable to claims for violation of the Fair Credit Reporting Act. Garner argues that *Safeco* implicitly overruled *Appalachian Resources*, and therefore *Safeco*'s willfulness standard, which requires a showing of reckless disregard, must be imported to the GCA. This contention has been addressed to, and rejected by, several district courts, including at

7

least two within the Sixth Circuit. *See Armalite, Inc. v. Lambert*, 512 F.Supp.2d 1070, 1073 (N.D. Ohio 2007); *Lumber Jack Bldg. Centers v. Alexander*, 536 F.Supp.2d 804, 808 (E.D. Mich. 2008); *see also Red's Trading Post, Inc. v. Van Loan*, No. CV07-090-S-EJL, 2008 WL 216611, at *4 (D. Idaho Jan. 24, 2008). The Court agrees with the courts in *Armalite* and *Lumber Jack* for the reasons expressed in those decisions. Accordingly, the Court finds that the definition of willful espoused by the Sixth Circuit in *Appalachian Resources* remains binding on this Court and continues to control review of FFL revocations like this one. Under *Appalachian Resources*, evidence that an individual was aware of his legal obligations under the GCA, but disregarded those obligations, is sufficient to establish a willful violation. 387 F.3d at 464; *see also Procaccio*, 233 F. App'x at 558. That standard is met where the licensee "acknowledges past recording violations and discussions with ATF officials regarding compliance, but nonetheless continues to discharge its duties insufficiently." *Deer Hunter, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2006 WL 2233451, at *2 (N.D. Ohio Aug. 3, 2006) (citing *Appalachian Resources*, 387 F.3d at 464).[7]

### C. Garner Was Aware of His Legal Obligations under the GCA

Here, Garner concedes that he was aware of his legal obligations under the GCA. Indeed, he could not argue otherwise. Garner's FFL was issued in 1982. Prior to instituting the license revocation proceedings, ATF conducted several compliance investigations, after which it issued ROVs setting forth Garner's regulatory violations. ATF followed up its inspections by going over the licensing obligations with Garner. After citing Garner for violations in May 2002,

---

[7] Garner also argues that in *Appalachian Resources* the Sixth Circuit, in formulating its interpretation of the willfulness standard under the GCA, created an overly strict standard that went beyond the cases upon which the court purported to rely.  Whether or not this is true, it is an argument that *Appalachian Resources* was decided incorrectly. This Court is powerless to entertain such an argument.

ATF sent him a warning letter, expressly informing Garner that future violations could lead to revocation of his FFL. Following the inspection in April 2004, after which Garner again was cited for numerous violations, ATF conducted a separate "warning conference" with Garner, the purpose of which was to impress upon Garner the importance of his compliance with ATF regulations. Thus, the Court concludes that Garner was aware of his obligations under the GCA. The only remaining question is whether Garner nevertheless failed to abide by those obligations.

### D. Garner Willfully Failed to Comply With His Obligations under the GCA

The Court need not address each of the six alleged violations supporting Respondent's decision to revoke Garner's FFL. "A party contesting revocation must establish that issues of material fact exist as to all of the violations that were cited in favor of revocation." *DeLange v. Alexander*, No. 1:07-MC-59, 2008 WL 1780945, at *3 (W.D. Mich. Apr. 16, 2008) (citing *3 Bridges, Inc. v. United States*, 216 F.Supp.2d 655, 659 (E.D. Ky. 2002)). Failure to do so compels entry of summary judgment in favor of the respondent. *Id*. With regard to at least two of the violations, Garner admits that the violations occurred, and his only argument in opposition to summary judgment is premised upon adoption of his reading of *Safeco* as having overruled *Appalachian Resources*, a position this Court rejected *supra*.[8]

#### 1. Count III

Lambert found that Garner willfully violated 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(4) by incorrectly recording serial numbers on three occasions.[9] Garner

---

[8] Garner also challenges Count III on the basis that the Forms 4473 that establish the basis for the violation were obtained by the ATF without his consent, and therefore should be barred from admission into evidence based on some variant of the Fourth Amendment exclusionary rule. For the reasons explained *infra*, this argument has no merit.

[9] Section 923(g)(1)(A) requires licensees such as Garner to, *inter alia*, "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." The pertinent regulation, 27 C.F.R. §

admits the truth of this finding, but argues, initially, that the seizure of the underlying records was unlawful because Garner did not consent, and therefore any evidence gained as a result of such search must be excluded. Alternatively, if the evidence is admissible, Garner argues that these violations were "inadvertent, technical record-keeping errors," rather than the product of willful or reckless indifference.

### a. The Records Were Seized Lawfully and Are Admissible

Garner asserts that the seizure by the ATF of the Forms 4473 which contained the serial number errors was unlawful because the records were taken without his consent. As a factual matter, the only evidence that Garner did not consent to the taking of the records is his own affidavit, filed in support of his opposition to summary judgment. (Garner Aff., Doc. No. 22-2, ¶ 16.) Garner's affidavit says nothing about the circumstances of the seizure; it merely states that he "did not consent to the removal of Forms 4473 from the licensed premises."

The Court, however, need not decide whether Garner's affidavit establishes a genuine issue of material fact as to his consent because, even if Garner did not consent to the records seizure by ATF, that seizure was not unlawful because it was authorized by the express terms of the GCA. By statute, the Attorney General is permitted to "inspect or examine the inventory and records of a [. . .] licensed dealer without [. . .] reasonable cause or warrant for ensuring compliance with the record keeping requirements of this chapter not more than once during any 12-month period." 18 U.S.C. § 923(g)(1)(B)(ii)(I). The records Garner claims were unlawfully seized were taken during an inspection that occurred in 2006. The most recent inspection prior to that one occurred in 2004. Accordingly, ATF was free to exercise its right to

---

478.124(c)(4) requires that the licensee "identify the firearm to be transferred by listing on the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm."

conduct a warrantless inspection and examination of Garner's records in 2006. To the extent Garner objects not to the inspection and examination, but to the removal of the records from the premises, this is a distinction without a difference.

The only authority cited by Garner for his argument that the ATF lacked authority to seize the records at issue is 18 U.S.C. § 923(g)(1)(D), which provides, in part,

> At the election of a licensed collector, the annual inspection of records and inventory permitted under this paragraph shall be performed at the office of the Attorney General designated for such inspections which is located in closest proximity to the premises where the inventory and records of such licensed collector are maintained. The inspection and examination authorized by this paragraph shall not be construed as authorizing the Attorney General to seize any records of other documents other than those records or documents constituting material evidence of a violation of law.

This statute, by its plain terms, does not apply to Garner, who was a licensed dealer. Rather, it applies only to "licensed collectors." Even if this subsection applied, it supports Lambert's position, not Garner's, as it includes an express exception for seizure of records "constituting material evidence of a violation of law." The records at issue undeniably evidence violations of law, specifically of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(4). They also qualify as material under any reasonable understanding of that term. Accurate completion of the forms by the licensee is required by law, and therefore the records at issue, which contain inaccuracies, represent violations of that law. By establishing violations of the GCA, the records constitute part of the basis for revoking Garner's FFL. They are, therefore, material, and thus, if § 923(g)(1)(D) applied (as Garner himself contends), their seizure nevertheless was authorized.[10]

Even if the records seizure was unlawful (which the Court finds it was not),

---

[10] Garner incomprehensibly contends that Lambert "does not argue that the Forms 4473 seized here were material evidence of a violation of law." Pet.'s Opp'n to Summ. J. 13. Contrary to Garner's contention, this is exactly what Lambert is arguing. *See* Resp.'s Reply 4. Lambert proposes to establish Garner's violation of the GCA by showing, through use of these forms, his failure accurately to report serial numbers for certain firearms, and then to revoke Garner's FFL based upon that showing (among others).

Garner fails to establish that any exclusionary rule bars the admission of the records as evidence in this proceeding.[11] No court ever has extended the Fourth Amendment exclusionary rule to civil administrative proceedings like this one. The only case cited by Garner in support of his exclusion argument is *One 1958 Plymouth Sedan v. Commonwealth of Pa.*, 380 U.S. 693 (1965). In *Plymouth Sedan*, the Supreme Court held that evidence seized during the course of a warrantless automobile search without probable cause could not be used in a proceeding for forfeiture of an article (the automobile) used in violation of criminal law. Lambert rightly points out that, in a later case, the Supreme Court explained that "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *United States v. Janis*, 428 U.S. 433, 447 (1976). In *Janis*, the Supreme Court noted that the decision in *Plymouth Sedan*

> expressly relied on the fact that "forfeiture is clearly a penalty for the criminal offense" and "(i)t would be anomalous indeed [. . .] to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring determination that the criminal law has been violated, the same evidence also would be admissible."

*Janis*, 428 U.S. at 447 n.17. Thus, *Plymouth Sedan*, involving as it did forfeiture proceedings that were quasi-criminal in nature, has no bearing upon the instant case. No authority exists for extending the Fourth Amendment exclusionary rule to the facts presented. Accordingly, the Court rejects Garner's contention that the evidence seized by ATF during the 2006 inspection should be excluded from consideration.

---

[11] As a threshold matter, Garner has not established either that he had a legitimate expectation of privacy in the records he seeks to exclude, or that his own Fourth Amendment rights were violated. An individual (almost always a criminal defendant) seeking to invoke the exclusionary rule bears the burden of showing that his Fourth Amendment rights were violated. *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (citation omitted). This generally requires the individual to demonstrate a legitimate expectation of privacy in the place searched and the items seized. *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000) (citation omitted). Garner has done none of this.

### b. Inadvertence Is Not a Defense

Garner's inadvertence argument also misses the mark. The relevant standard, as clearly expressed by the Sixth Circuit, is that "where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." *Appalachian Resources*, 387 F.3d at 464. Where, as here, the licensee admits that he understood his obligations and that he failed to abide by those obligations by committing the violation in question, the Court must find that he acted willfully. *See Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 415 F.3d 1274, 1277 (11th Cir. 2005) ("a dealer's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference.")

Garner's protestation that the violations concerning the reporting of serial numbers were attributable to mere inadvertence, and thus do not establish his disregard of, or plain indifference to, a known legal obligation, rings hollow. Arguments attempting to minimize the severity of admitted violations as minor or technical are irrelevant. *DeLange*, 2008 WL 1780945, at *4. The severity of recordkeeping errors plays no role in evaluating willfulness. *Article II Gun Shop, Inc. v. Ashcroft*, No. 03 C 4598, 2005 WL 701053, at *5 (N.D. Ill. Mar. 25, 2005). The recordkeeping requirements imposed by the GCA are, by their very nature, highly technical. Compliance therefore requires extreme vigilance. "[T]he gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms." *Willingham Sports, Inc. v. Bureau of*

*Alcohol, Tobacco, Firearms and Explosives*, 348 F.Supp.2d 1299, 1309 n.14 (S.D. Ala. 2004). The licensee's "failure to comply with exacting book keeping regulations may hinder the ATF's ability to perform its mandated function." *Dick's Sport Center, Inc. v. Alexander*, No. Civ. 2:04CV74482, 2006 WL 799179, at *5 (E.D. Mich. Mar. 29, 2006) (citation omitted).

ATF went to great lengths to impress upon Garner the need for such vigilance. Garner's records were audited, and reports of violations were issued to him, on numerous occasions before revocation proceedings were instituted. On each of these occasions, the reporting requirements were reviewed with Garner. Several advance warnings were issued, and the consequences of later non-compliance thoroughly explained. Subsequent investigations continued to uncover multiple violations. Under the circumstances, any departure from proper reporting likely would constitute reckless behavior, at least in the absence of a very convincing excuse. But with respect to the serial numbers, Garner offers no explanation, merely characterizing all three errors as typos and arguing that he should not be held accountable. When it comes to reporting serial numbers, a very technical exercise, typos are completely unacceptable. Yet Garner not only admitted the violations, he presented no evidence concerning the implementation of any procedures that were designed to prevent errors of this kind. Nor did Garner attempt to put the errors in context by, for instance, presenting evidence to show that the three errors cited by ATF were the only examples to be found among many thousands of correctly reported serial numbers over the many years in which Garner conducted business. And, of course, the serial number errors hardly stand alone. Rather, they are just one category of violations in the Notice of Final Revocation setting forth six such categories, and just one among dozens of total violations for which Garner was cited over the years. Under the circumstances,

the Court has no trouble finding that Garner acted with plain indifference to his obligations under the GCA, obligations of which he was fully and completely cognizant.

This case is indistinguishable[12] from one in which the Fourth Circuit (which employs a similar, if not identical, willfulness standard[13]) affirmed a district court's grant of summary judgment in favor of the respondent. *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006). In that case, the licensee, like Garner, had been inspected repeatedly, cited for violations, and warned of the consequences. Addressing the petitioner/appellant's argument that the errors were of the inadvertent, technical variety, the Court stated,

> To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the legal requirement to complete the forms was known. Yet at some point, when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. At that point, the failures show the licensee's plain indifference and therefore become willful.

*RSM*, 466 F.3d at 322. In this case, the hearing officer concluded that Garner was plainly indifferent to his responsibilities under the GCA. (Gov't Ex. 29, 16.) Based upon its own review of the undisputed facts, the Court concludes likewise. Garner was plainly indifferent to his obligations under the GCA, and therefore his violations were willful. Lambert's decision to revoke Garner's FFL therefore was authorized, and her motion for summary judgment is granted.

---

[12] In *RSM*, the licensee was found to have committed a total of 900 willful violations. In this case, the number of undisputed violations is lower than that, but the same pattern of inspections, reports of violations, discussions regarding the compliance obligations, issuance of warning letters and conduct of warning conferences, over a period of many years, is present.

[13] The Fourth Circuit held the willfulness requirement "satisfied by a showing of, among other things, a disregard of or an indifference to known legal obligations." *RSM*, 466 F.3d at 321 (citing, *inter alia*, *Appalachian Resources*, 387 F.3d at 464-65.)

**2. Count VI**

Lambert also concluded that Garner willfully violated 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a by, on a single occasion, transferring two handguns without submitting the required form, ATF Form 3310.4, "Report of Multiple Sale or Other Disposition of Pistols and Revolvers."[14] In his testimony at the administrative hearing, Garner conceded that this violation also took place, but expressed disbelief at the fact, and stated that "in all the years that's the only time it's ever been a question [. . .]." (Gov't Ex. 32, 196.) By this, presumably, Garner meant that the failure to file the Form 3310.4 in this instance was the only time this had occurred during his time as a licensed firearms dealer. This is, however, under controlling precedent, irrelevant.[15] Garner was aware of his obligations, and by failing to submit the required Form 3310.4 in a circumstance where concededly he was required to do so, Garner failed to comply with those obligations. Accordingly, that failure constituted a willful violation of the GCA, independently sufficient to authorize the revocation of Garner's FFL. On this separate and independent basis, Lambert's motion for summary judgment must be granted.

Because the Court finds that either of the undisputed violations set forth in the Final Notice of Revocation is sufficient to sustain the revocation decision, the Court declines to address the other alleged violations. Any such discussion would be exceedingly superfluous.

---

[14] Section 923(g)(3)(A) requires the licensee to "prepare a report of multiple sales or other dispositions whenever the licensee sells or otherwise disposes of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more, to an unlicensed person. The report shall be prepared on a form specified by the Attorney General and forwarded to the office specified thereon [. . .] not later than the close of business on the day that the multiple sale or other disposition occurs." The implementing regulation, 27 C.F.R. § 478.126a, specifies that the report shall be prepared on Form 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers."

[15] It also is demonstrably false. According to the undisputed facts, Garner was cited for the very same violation in 2002. (Gov't Ex. 11). Violation number six cited Garner for failure to complete Form 3310.4 to report the multiple sale of pistols and/or revolvers.

### III. Conclusion

For the foregoing reasons, Lambert's motion for summary judgment is **GRANTED**. Lambert's decision to revoke Garner's Federal Firearms License was **AUTHORIZED**. The Final Notice of Revocation issued on September 24, 2007, is **AFFIRMED** and Garner's Federal Firearms License is **REVOKED**.

**IT IS SO ORDERED**.

Dated: May 22, 2008

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**